# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br>16-md-2724 |
| *IN RE: CLOBETASOL CASES* | EPP CASE: 16-CB-27242 |
| *IN RE: CLOMIPRAMINE CASES* | EPP CASE: 16-CM-27242 |
| **THIS DOCUMENT APPLIES TO:**<br>*EPP BELLWETHER ACTIONS* | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                                   February 12, 2025

      This multidistrict antitrust litigation concerns alleged price-fixing schemes involving numerous generic drugs and generic drug manufacturers. The Court selected as initial bellwether cases proposed class actions brought by End-Payer Plaintiffs ("EPPs") and Direct Purchaser Plaintiffs ("DPPs") as to two generic drugs, clomipramine and clobetasol. This Opinion considers Defendants' motion to reconsider the Court's partial *Daubert* exclusion of two experts' opinions and testimony pertaining to the EPPs' motions for class certification in the clomipramine and clobetasol cases, or, in the alternative, to allow those experts to submit supplemental expert reports. For the following reasons, the Court will grant Defendants' motion for reconsideration in part and deny in part. The Court will deny the Defendants' motion to permit supplemental reports.

**I.   BACKGROUND**

The Court assumes familiarity with the *Daubert* Opinion.[1] EPPs in this case have moved for class certification, which Defendants oppose. Accordingly, the Court considered *Daubert* motions against experts presented by both parties whose analyses bear on the issue of class certification. The Court held hearings on these *Daubert* motions on September 24-26, 2024, and October 8, 2024, and the parties presented oral argument on October 10, 2024.[2] The Court then issued the *Daubert* ruling granting certain motions and denying others. Defendants have now asked the Court to reconsider its opinions as to portions of Dr. Hughes's and Dr. Trish's expert testimony.

**II.   LEGAL STANDARD**

"[M]otions for reconsideration should be granted sparingly."[3] A motion for reconsideration should be granted only where the moving party shows that at least one of the following grounds is present: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[4] "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should

---

[1] *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-MD-2724, 2024 WL 4980784 (E.D. Pa. Dec. 3, 2024) [MDL Doc. No. 3171].

[2] *See generally* Tr. of Daubert Hr'g (Sept. 24, 2024) [Doc. No. 3110]; Tr. Of Daubert Hr'g (Sept. 25, 2024) [Doc. No. 3111]; Tr. of Daubert Hr'g (Sept. 26, 2024) [Doc. No. 3112]; Tr. of Daubert Hr'g (Oct. 8, 2024) [Doc. No. 3123]; Tr. of Daubert Hr'g (Oct. 10, 2024) [Doc. No. 3138].

[3] *Tomasso v. Boeing Co.*, No. 03-4220, 2007 WL 2458557, at *2 (E.D. Pa. Aug. 24, 2007) (citation omitted).

[4] *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) (citation omitted).

be granted sparingly."[5] Moreover, "[a] motion for reconsideration is not properly grounded on a request that a court consider repetitive arguments that have been fully examined by the court."[6]

### III. DISCUSSION

Defendants ask the Court to reconsider and revise portions of its Opinion that granted EPPs' motions to partially exclude the opinions of Dr. Erin Trish and Dr. James Hughes.[7] As a preliminary matter, Defendants argue that the Court did not apply the correct *Daubert* standard to Dr. Trish and Dr. Hughes as rebuttal experts.[8] As the Court explained in the *Daubert* Opinion, rebuttal experts need not provide an alternative analysis or methodology to be reliable, but expert opinions must still meet the *Daubert* standards regardless of whether they are offered in rebuttal.[9] Rebuttal experts must ground their opinions in a reliable methodology for the opinions they present—including where they make affirmative statements, findings, or propose alternative analyses as part of their critique. Where the Court found fault with Dr. Trish and Dr. Hughes's analyses, it was because they did not adequately support those analyses to render them admissible under *Daubert*. Defendants do not cite controlling precedent to demonstrate that the Court's decision is a clear error of law.

---

[5] *Cont'l Cas. Co. v. Diversified Indus.*, Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995) (citing *Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa.1992).

[6] *Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc*., 246 F. Supp. 2d 394, 398 (E.D. Pa. 2002) (citation omitted).

[7] *In re Generic Pharms. Pricing Antitrust Litig*., No. 16-MD-2724 at 18-35 [MDL Doc. No. 3171].

[8] Defs.' Mem. Supp. Mot. Partial Reconsideration Mot. Permit Certain Supp. Reps. [Clomipramine], No. 16-CM-27242 [Doc. No. 255] at 20-25. Because the parties' filings on the Clomipramine and Clobetasol dockets are largely duplicative, the Court will cite only to the Clomipramine docket and other documents for the purpose of clarity and consistency.

[9] *In re Generic Pharms. Pricing Antitrust Litig*., No. 16-MD-2724 at 27-28 [MDL Doc. No. 3171].

### A. Dr. Erin Trish

Dr. Erin Trish is Defendants' expert used to explain the drug supply chain, analyze the role of intermediaries (such as pharmacies and PBMs in generic pricing), and review opinions by Plaintiffs' experts on those topics.[10] EPPs moved for the Court to exclude Dr. Trish's report and testimony largely based on the theory that those opinions related to brand rebates, post-conspiracy materials, other pricing tools, spread pricing, and impact and pass-through of injury.[11] As a result, EPPs sought to exclude Dr. Trish's opinions in two primary areas: (1) her opinions on spread pricing, which they argued were methodologically unsound, and (2) certain background materials that EPPs contended were irrelevant in the present case because they relied on extraneous or prejudicial background material.[12] The Court granted EPPs' motion.[13] Defendants now ask the Court to reconsider its opinion on those two points.

#### 1. Spread Pricing Opinions

EPPs moved to exclude Dr. Trish's spread pricing opinions on the basis that her report and testimony lacked sufficient analysis and because Dr. Trish did not adequately connect her observations to the facts and circumstances of these cases.[14] The Court agreed, finding too large an analytical gap between Dr. Trish's analysis and her opinions critiquing EPPs' experts, including her affirmative opinions that spread pricing caused end-payer price increases

---

[10] Bank Decl., Ex. 8, Trish Expert Report [Clomipramine], at ¶¶ 1-4 [Doc. No. 201-10] (hereinafter "Trish Clomipramine Rep.").

[11] EPPs' Mem. Supp. Mot. Partially Exclude Opinions and Test. Trish Ex. 1, No. 16-CM-27242 [Doc. No. 230-1].

[12] EPPs' Mem. Supp. Mot. Partially Exclude Trish at 2, 5 [Doc. No. 230].

[13] *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-MD-2724 at 69 [MDL Doc. No. 3171].

[14] Defs.' Mem. Supp. Mot. Partial Reconsideration Mot. Permit Certain Supp. Reps. [Clomipramine], No. 16-CM-27242 at 11 [Doc. No. 255].

independently of manufacturer list price increases.[15] The Court ultimately determined that Dr. Trish's opinions did not meet *Daubert* standards because the data in her report did not reliably support her findings.

Defendants ask the Court to reconsider its position on Dr. Trish's analysis. Defendants point to examples in Dr. Trish's report that they demonstrate a reliable foundation for Dr. Trish's opinions. First, Defendants argue that Dr. Trish's opinions demonstrate how PBMs captured profit from bellwether drug sales by showing the correlation between WAC prices and average total spread over time. Defendants also argue that Dr. Trish properly opined that PBMs leveraged consolidation, complexity, and opacity to increased end-payer drug costs for the bellwether drugs. Further, Defendants contend that Dr. Trish's opinions are proper rebuttal critiques that should not have been excluded. EPPs counter, arguing that Dr. Trish did not meet "standards for responsible economic analysis on causation and damages."[16] EPPs focus on what they argue is Dr. Trish's central opinion—that PBMs are the independent cause for increased costs for EPPs, rather than the alleged cartel. EPPs argue that this is a critical, fundamental flaw of Dr. Trish's analysis because she performed no statistical or multiple regression analyses to test that hypothesis and because she ignored contrary evidence. In addition, EPPs argue that each of Defendants' examples from Dr. Trish's testimony say little about causation.

The Court originally excluded Dr. Trish's opinions on spread pricing on the issue that EPPs press here, that Dr. Trish did not provide a reliable basis to provide affirmative opinions that spread pricing led to, or caused, EPPs' injury. Dr. Trish opines that PBM spread "increases

---

[15] Trish Clomipramine Rep at 17 ("I find that business practices implemented by PBMs have affected the prices paid by end payors for the bellwether drugs independent of any changes in manufacturer list prices").

[16] EPPs Opp'n Mot. Partial Reconsideration Mot Permit Certain Supp. Reps. [Clomipramine], No. 16-CM-27242 at 2 [Doc. No. 359].

end payor costs," independently of any alleged cartel.[17] As the Court previously determined, however, these conclusory findings are not supported by Dr. Trish's analysis.[18] The Court will not reconsider that opinion and affirms that Dr. Trish's opinions on causation remain excluded. Although Dr. Trish provided data on total spread pricing, her opinion does little to provide a logical bridge to conclude, from that data, that the increased spread caused injury for EPPs. For example, Defendants argue that the Court overlooked Dr. Trish's analysis comparing monthly average PBM spread per extended unit for Named Plaintiff BCBS to WAC prices for each National Drug Code over time for each bellwether drug when it opined that Dr. Trish had not adequately demonstrated how PBMs captured savings to lead to increased end payor costs.[19] But Dr. Trish failed to demonstrate how total average spread per month necessitates that "PBM spread increases end payor costs relative to what they would be with a smaller PBM spread, independent of any change in manufacturer WAC."[20] Dr. Trish presents the total monthly spread in dollar amounts, but does not grapple with the percentage of spread, nor does she explain why increased spread, following a massive WAC spike, indicates that spread pricing drives end payer injury independent of Defendants' alleged collusion.

In addition, the Court previously determined that Dr. Trish could not rest her opinion that PBMs had leveraged "complexity, opacity, and consolidation" to increase end-payer drug costs on her own say-so and on literature that describes those qualities in the PBM industry in

---

[17] *See* Trish Clomipramine Rep. at 95.

[18] *Id* at 94-95.

[19] *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-MD-2724 at 35 [MDL Doc. No. 3171]; Trish Clomipramine Rep. at 94-95; Defs.' Mem. Supp. Mot. Partial Reconsideration Mot. Permit Certain Supp. Reps. [Clomipramine], No. 16-CM-27242 at 7 [Doc. No. 255].

[20] Trish Clomipramine Rep. at 95.

general.[21] Defendants argue that PBMs "indisputably" increased end-payer drug costs, but Dr. Trish failed to reliably demonstrate that PBMs did so in *this* case. Although Defendants argue that her opinion is valid because there is a logical basis—her analysis of studies showing how PBMs leveraged those factors in the general industry—the Court maintains its earlier opinion that she erred in not sufficiently tying those factors to the products at issue.

In contrast, Defendants have raised a valid point as to certain of Dr. Trish's rebuttal opinions. Upon reconsideration, the Court agrees that there are segments of Dr. Trish's opinion that can be carved out from the excluded portions of her analysis because they support Dr. Trish's critique of EPPs' experts separate and distinct from her affirmative opinions on causation. Where Dr. Trish's opinions and testimony serve to point out issues involving PBMs in direct response to EPPs' expert reports, she may do so to the extent that her opinions are limited to introducing data and evidence that she argues these experts did not properly consider in forming their opinions. Thus, Dr. Trish may opine that EPPs' experts did not properly integrate spread pricing analyses in their reports and testimony, or that she disagrees with EPPs' experts' characterizations of the market. Consistent with the Court's *Daubert* opinion and opinions above, however, Dr. Trish may not opine the PBMs caused inflated prices or otherwise opine that increases in end payer costs occurred because of actions by intermediaries, including through spread pricing or other PBM markups.

2. **Background Material**

EPPs argued in their original briefing that certain background material, included in Dr. Trish's report, was irrelevant to the generic pharmaceutical industry. This included a discussion of brand drug rebates, post-class period materials, pending investigations, unenacted legislation,

---

[21] *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-MD-2724 at 34 [MDL Doc. No. 3171].

7

and "other" pricing tools, including certain fees charged to and by PBMs.[22] Upon analysis, the Court determined that Dr. Trish's opinions and descriptions on those topics were indeed either "irrelevant to the present matter or unduly prejudicial," and thus unfit for the matter.[23] Defendants urge the Court to reconsider its opinion on these materials, arguing that the background material provided is reliable and relevant because the materials Dr. Trish relied on discuss practices used during the class periods.

Although the Court excluded certain post-conspiracy materials, the Court also held that certain events, for example, agency investigations and congressional hearings, were not *relevant,* regardless of whether they occurred during the class periods.[24] The Court determined that measures taken against PBMs were not tied to the issues at hand in this case and, because the Court determined that those opinions were likely to confuse the fact finder, it determined that those opinions were not fit for these proceedings. The Court agrees that experts may rely on certain materials in formulating an opinion, and accordingly did not exclude background material presented by various experts, including some of Defendants' experts, that was sufficiently tied to the generic pharmaceutical industry. The material excluded in Dr. Trish's report, however, was not.

Defendants' motion for partial reconsideration of the Court's partial exclusion of Dr. Trish as an expert witness is granted in part to include her opinions that directly critique EPPs'

---

[22] Defs.' Mem. Supp. Mot. Partial Reconsideration Mot. Permit Certain Supp. Reps. [Clomipramine], No. 16-CM-27242 at 5-11 [Doc. No. 255].

[23] *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-MD-2724 at 32 [MDL Doc. No. 3171].

[24] "The Federal Trade Commission's Investigation of PBM practices, various measures taken by states, policies by private payers, and potential legislative activity are only tenuously related to the issue of determining whether PBMs could have impacted pricing for clomipramine and clobetasol in these cases. Although descriptions of each of the above actions may be relevant to a discussion of the broader regulatory and enforcement environment for PBMs, those unrelated initiatives are significantly more likely to be more prejudicial and confusing to the fact finder than they are to be illuminating in this matter." *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-MD-2724 at 33 [MDL Doc. No. 3171].

8

experts for overlooking certain data and considerations in their analyses. The remainder of Defendants' motion, regarding Dr. Trish's use of background material and to the extent that she opines that PBMs caused inflated prices, is denied.

### B. Dr. James Hughes

Defendants presented Dr. James Hughes to opine on class-wide injury and damages and whether individualized inquiry is necessary to assess antitrust injury and damages to the members of the proposed classes.[25] The Court excluded Dr. Hughes's opinions on injury on the basis that his deposition, reports, and opinions on TPP injury offset by way of passthrough in the form of insurance premiums to end users demonstrated a fundamental misunderstanding of antitrust injury.[26] Defendants request that the Court reconsider its opinion as to his analyses which they argue are based on individual transactions, and as to his opinions on clomipramine sales to CVS Pharmacy.

Defendants point to no clear error of law, nor do they reveal additional facts that would lead the Court to view Dr. Hughes's testimony differently. In the Court's view, Dr. Hughes's report and testimony revealed a fundamental error in his analysis that render his conclusions on injury from the data wholly unreliable. Defendants' motion for partial reconsideration of Dr. Hughes's opinion is thus denied.

### C. Supplemental Reports

In the alternative, Defendants ask the Court to accept supplemental reports from Dr. Trish and Dr. Hughes under Federal Rules of Civil Procedure 16(b)(4) and 26(e). Defendants cite the Third Circuit's opinion in *Meyers v. Pennypack Woods* for factors that a court may consider

---

[25] Hughes Expert Report [Clomipramine], Bank Decl. Ex. 6 ¶ 1-3, No. 16-CM-27242 [Doc. No. 201-8].

[26] *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-MD-2724 at 18-29 [MDL Doc. No. 3171].

when determining whether to allow additional testimony outside of court-ordered deadlines: 1) prejudice or surprise to the opposing party; 2) the ability of the opposing party to cure the prejudice; 3) the disruption of the orderly and efficient trial of the case; 4) bad faith or willfulness; and 5) the importance of the evidence.[27]

Defendants argue that the *Pennypack* factors support allowing supplemental reports. The EPPs, they contend, would not be prejudiced because Defendants do not propose new experts or new theories—only experts that have been deposed and questioned at length. Further, Defendants argue that there is ample time for both experts to prepare those reports and be deposed on them without change to the parties' completed summary judgment briefing schedule. On the final factor, Defendants argue that issues discussed by the experts are important issues in the bellwether and remaining cases, and both experts' testimony would be instructive for various parties in the MDL.[28] EPPs argue that reopening expert discovery at this point in the bellwether litigation would be greatly prejudicial.

Upon consideration of the *Pennypack* factors, the Court will not permit the supplemental reports. There is certainly no evidence of bad faith or willfulness. However, to allow supplemental reports would result in prejudice in the form of additional costs and, significantly, delay at this juncture. This sprawling and complex MDL has been pending since 2016, and the *Daubert* ruling was a key step in a sequence of critical bellwether events: class certification, summary judgment, and potentially the initial bellwether trials set to begin in August 2025. The

---

[27] *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977).

[28] Defendants cite this Court's decision in the *Zoloft* MDL, in which the Court allowed the submission of a new report from a new expert and argue that *Zoloft* should guide this Court to allow supplemental reports from Dr. Trish and Dr. Hughes. *Zoloft* is not instructive here. In that MDL, the Court allowed plaintiffs to present new expert because plaintiffs had no other expert on which to rely. The situation is not remotely as dire in this case. *In re Zoloft Prod. Liab. Litig.*, No. 12-MD-2342, 2015 WL 115486 (E.D. Pa. Jan. 7, 2015).

Court has held hearings on class certification, and summary judgment motions have been extensively briefed. Defendants' motion for supplemental reports is denied.

### IV.    Conclusion

Defendants' motion for partial reconsideration is **GRANTED** in part to the limited extent that the Court excluded portions of Dr. Trish's argument on spread pricing that directly respond to EPPs' experts, but not to the extent that Dr. Trish opines that spread pricing or intermediary actions caused inflated prices. Defendants' motion for partial reconsideration is **DENIED** in part as it relates to the remainder of Dr. Trish's opinions and as it relates to Dr. Hughes's opinions. Defendants' motion for supplemental reports is **DENIED**.

An order will be entered.